## PAINE & WILLIAMS v. BALDWIN RUBBER CO.

### No. 7211.

District Court, E. D. Michigan, S. D.
April 15, 1938.

Fay, Oberlin & Fay, by John F. Oberlin and Baker, Hostetler, Sidlo & Patterson, by Howard F. Burns and John Adams, all of Cleveland, Ohio, and Beaumont, Smith & Harris, by L. S. Robinson, of Detroit, Mich., for plaintiff.

Whittemore, Hulbert & Belknap, by Clarence B. Zewadski, of Detroit, Mich., and George Wilkinson, of Chicago, Ill., for defendant.

TUTTLE, District Judge.

■ The identical question of infringement here involved was before Judge O'Brien in a suit at law between these same parties, based upon a license agreement. This court, through Judge O'Brien, has decided that issue in favor of plaintiff, and as between these parties it is res adjudicata.

In deciding that question of infringement, it was necessary and proper to decide the scope of the claims, and in doing that to have in mind the prior art.

It would, in my judgment, be difficult to find two patents in which a study of the prior art was any less necessary than it would be in these patents in order to understand the breadth of the claims. In other words, I don't think, in deciding the question of infringement, that it was necessary to decide any of the elements that go to make up the issue of validity.

So much for the prior suit. Validity of the patents was not a necessary issue. It was not a permissible issue to be injected into the lawsuit. I don't interpret anything that happened in that lawsuit before Judge O'Brien as having raised such an issue. I don't think that Judge O'Brien determined any of the issues that this Court needs to determine in passing upon validity.

So I hold that the question of validity, and every element of that question of validity, are open for a chancellor in this case, are not res adjudicata, and, on the other hand, that the question of infringement is res adjudicata.

I take the case as I would an ordinary patent case, so far as the question of validity is concerned.

■ The Turner patent in suit was applied for July 27, 1925, issued June 4, 1929, and given the number 1,715,523. The only claim in suit in that patent is number 3, which reads as follows:

"A floor covering or the like, flexible throughout, comprising a loosely-compacted fibrous base, and an upper wearing-surface layer of flexible, vulcanized rubber, said base including a layer of fabric stitched thereto."

It seems very plain that the portion of that claim which refers to the fabric is entirely surplusage. If this claim were to be held valid and the Court came to interpret it, the Court might say that the patentee had unnecessarily limited himself in the claim, but surely he would be inclined to go very far in the way of saying that it didn't even do that.

On the question of validity, it neither helps nor harms anyone. It makes the plaintiff's difficulties no greater.

Instead of thinking of the fiber and the fabric in the fiber as two elements of the combination, I think of them as one element of that claim. I think of the fabric as descriptive of the element. It was an unnecessary description because it has nothing to do with the way the patent functions. It would work in the same way if made without the fabric in the fiber. It has nothing to do with the invention. The patentee selected for his fiber base the kind of fiber that had the fabric in it. If a patentee in claiming some entirely different kind of an invention needed to make one element of wood, and unnecessarily described the wood as hard maple, it would neither help him nor harm him in determining validity.

What he wanted here was a springy, yielding, resilient mass below the rubber surface of the rug, and he defined it by saying it was fiber attached to fabric.

It is that kind of a base that Turner was looking for and that he found and put in the combination of the claim. The fabric doesn't enter into the way the patent functions at all.

I mention all that, not as I have said because it makes this patent any less valuable or makes it any more difficult for plaintiff to satisfy a court that it is a valid claim, because it is agreed that the fiber and the fabric were found together and therefore the presence of the fabric does not add anything of genius. It was old in the art to have the fiber without the fabric in it, the fiber being made in such a way that it would hold itself together. One might be a little more desirable than the other, one might be a little cheaper than the other; but the point is it has nothing to do with the way the patent functions.

So we really have a claim for a patent with two elements. We have the loosely-compacted fibrous base and an upper surface layer of flexible, vulcanized rubber.

That is the kind of a claim it is. We should eliminate the fiber from our thought and mind in determining the validity of this claim. I would reach the conclusion that this broad claim is void, without going to the records of the Patent Office or going to the files of publications, or to the testimony of witnesses as to the things that happened in distant parts of the world.

It seems to me that the experiences of every individual who has lived for half a century and seen the things about him, including rugs, would show that broad claim very old, and therefore void. "A floor covering or the like, flexible throughout—." In that we are just describing what every foot that has walked the front steps, the hallways and the rooms of buildings has felt and experienced. Rugs have always been flexible throughout. At least, it is not an unusual quality. A rug that was not flexible throughout would be approaching the unusual.

The next element described is a "loosely-compacted fibrous base". Of course not all rugs are made with bases, but so many of them are made with bases, fibrous bases, that any individual only has to retrace his own steps to find those steps leading him across rugs that had fibrous bases, common not only in what we call rugs, but in carpets. It is something that has continued right down through the years.

My experience began in the country and on the farm. I never laid the carpet directly in contact with the floor. The floor was a pretty rough one. Our loosely compacted base was straw or the old weekly newspapers. The usual thing was to put straw or paper under that carpet to protect it. The purposes were just the same as the purposes that this patent had in mind. It was yielding and would come back with a certain degree of resilience, it made it warmer when the wind got under the house, it protected against the cold, made the temperature more uniform, was nicer to walk over, didn't wear out so quickly. I can't think of any of the things that would be in the Turner patent that were not right in that old carpet with the papers under it, unless it be the fabric, and I say that is no material part of the claim. That, however, was in a way present. It was not uncommon to cover the floor with straw, place papers over the straw, and then stretch the carpet over the paper. The paper served as a fabric to hold the loose straw in place.

There have been door mats for many years that have had rubber tops and something like rope on the under side, and some are made of rope without any rubber top.

There are all sorts of combinations of that kind and practically all of them were "a floor covering or the like, flexible throughout". For very many years, there have been flexible rugs, having a "loosely-compacted fibrous base". Many of them have had that kind of a base, and "an upper wearing-surface layer of flexible, vulcanized rubber".

It would be impossible to try to save this patent on any theory that it was more flexible, either throughout or that the wearing surface was more flexible, than what had preceded it.

To try to interpret it in such a way would give a meaningless interpretation. No one would know with what to make comparison. It would be like the balloon tire case. Some over-sized old tires were bigger than some so-called new balloon tires.

It doesn't function differently on account of the degree of flexibility.

The Turner patent reads clearly on what we have all seen and all have done as long as we can remember. When we go to the Patent Office, we find very many prior patents which reflect these things that we have all seen for so many years. In addition to the well-known common uses and the prior patents, proof has been offered relative to what happened in the Hudson Company. It was not an isolated case, but prior to this patent it was common use in the Essex car, beginning early in 1924. They understood everything that is described in the Turner patent. That proof relative to the Essex is unusually specific, definite, clear, and convincing. The courts ought to be very critical of proof on that subject because it is so easy for witnesses to make mistakes about dates. When a great manufacturing plant, like the Hudson automobile plant, makes thousands of cars like the Hudson and like their baby car, the Essex, there doesn't need to be any doubt in the Court's mind if sufficient effort is made to find out when it was.

There isn't any more doubt about when the Essex began to use that fibrous base under the rubber wearing-surface than there is about when Henry Ford made his first car or Olds made his first car. The records are genuine and honest, they were kept by this company to govern its own business. Those records which were sufficient to record business running into thousands of automobiles are, of course, sufficient for the Court to rely upon with confidence and without any feeling of doubt. There is not any doubt at all about it.

Along early in the year of 1924, the Hudson automobile company began to get ready to put fiber under the rubber wearing-surface of the rug, and they placed their orders with the manufacturer of the fiber through the manufacturer's agent. We have three records. We have the manufacturer's record, the record of the manufacturer's agent, and the record of the Hudson Motor Car Company. They all fit in with each other and it just passes beyond the range of the ordinary burden of proof and becomes a matter of certainty concerning which there is no doubt and no mistake at all.

Now I come to the patent in suit to W. S. Vrooman, No. 1,715,525. The application was filed May 13, 1927, and the patent was granted June 4, 1929. It has only one claim, and that reads thus:

"A covering for floors and the like comprising a resilient, fibrous base and an upper wearing layer of rubber, said upper layer extending beyond said base as a free, flexible margin."

The first part of this claim, reading, "A covering for floors and the like, comprising a resilient, fibrous base and an upper wearing layer of rubber", describes exactly what Turner had described, and I have already indicated how old all of the things described by Turner were. The balance of this claim reads,

"Said upper layer extending beyond said base as a free, flexible margin."

I say about that as I have said about Turner.

The carpets of our boyhood were not only flexible but they extended out beyond the margin of the fibrous substance which was underneath the carpet. No one ever carried the straw out to the edge of the carpet. We always kept it back. We didn't want it sticking out with the whiskery effect described. No woman would want straw sticking out around her carpet. If he had described a rigid covering, it wouldn't be useful, but it would be a novelty. If he had described an upper surface

which did not extend beyond the base, it would have been a troublesome novelty.

This isn't taking something after a patentee has found it and going back and saying it was easy to think of it, but the thing claimed in the patent is what has been done ever since they began to put padding under rugs and let the edge hang down and cover it up. For the past twenty-five years it has been common practice to cut the matting back so it was smaller than the flexible wearing-surface of the rug, and the edges of the rug fall down over the end of the matting. I just supposed that those things were old and naturally done in that way, but it seems the Patent Office has permited people to cover those simple things with patents, and they are old from that standpoint of prior patents. We go back to the automobile industry, and there are prior uses in the Essex cars.

Now it is said that in the use made in the Essex cars the free, flexible margin was not all the way around the rug. When we come over to the question of infringement, infringement is here claimed, and I think correctly claimed if any part of the margin infringes this claim of the Turner patent. If you infringe at all, you infringe to the extent that you do come within the claims of the patent, so it seems plain to me that a rug in an automobile could very well infringe at certain parts of the rug and not infringe at another part of the same rug. I was shown an Essex car made in 1926 and the rug was of the type described by Vrooman.

My idea of patents is not to get the world all so tied up that when a mechanic is doing a job he can't go ahead and do the things that a man ordinarily would do if he were not dumb. When you are laying a rug the natural thing is to let the top wearing surface extend over the matting. You may come to a place where you don't want to do it. You may want to do it all the way around. You may want to do it in some places and not others, but it is a use that has been made through the years, and they ought to be permitted to continue the use in that way.

In making these holdings, I have in mind that there have been a lot of licenses issued, and the proofs show there was a lot of money spent for the privilege of using these patents. If the question of validity were a close one, I would certainly let this recognition tip my decision, because the number of licenses goes beyond what is usual, and the amount of money paid is enough, in a doubtful case, to tip the Court's opinion, but I say that this isn't a doubtful case. There isn't any doubt in my mind about it.

I don't know what prompted the large number of licenses. I know that patents have been used to regulate prices and stabilize prices. I don't know what may have been back of this.

The claims in suit of both of these patents are so clearly void that no tribute paid them by taking licenses, no matter how large the number, can change the situation. That sort of thing can't make an absolutely void patent good. In doubtful cases it tips the scales in favor of a plaintiff.

So I hold the claims in suit in each one of these patents void and dismiss the bill with costs.